**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

MEDICI888, INC.,

      Plaintiff,

v.                                                                             Action No. 2:12cv317

RILEYS LIMITED,
HAYLEYS PLC,
RAVI INDUSTRIES LIMITED,
HAYLEYS FIBRE,

      Defendants.

**REPORT & RECOMMENDATION**

This matter comes before the Court on Plaintiff's motion for entry of default judgment in favor of Plaintiff, Medici888, Inc., and against defendants, Hayleys PLC, Ravi Industries Limited, and Hayleys Fibre (collectively "the Default Defendants"). Plaintiff filed this Motion for Default Judgment on April 3, 2013. ECF No. 15. The motion was referred to the undersigned on April 23, 2013 (ECF No. 16), and a hearing was held on June 25, 2013. Plaintiff was represented by C. Kirkpatrick Vogel, Esq. The Default Defendants did not appear. The Official Court Reporter was Heidi Jeffries. The undersigned RECOMMENDS that Plaintiff's motion be DENIED.

**I. PROCEDURAL HISTORY**

Plaintiff filed this breach of contract action against four defendants on June 6, 2012. ECF. No. 1. Four summonses were issued the same day. Following an extension of time to effect service, two summonses were returned on November 16, 2012, indicating the Complaint had been served on Hayleys Fibre and Ravi Industries Limited. ECF No. 7. Following an additional

extension of time to effect service, a summons was returned on February 20, 2013, indicating the Complaint had been served on Hayleys PLC. ECF No. 10. A motion to further extend the deadline for service on defendant Rileys Limited ("Rileys") was granted on June 26, 2013, and Medici888 has until September 23, 2013 to serve Rileys. ECF No. 22.

On April 2, 2013, following Plaintiff's request, the Clerk of this Court submitted an Entry of Default as to defendants Hayleys PLC, Ravi Industries Limited, and Hayleys Fibre, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 13. Plaintiff filed a Motion for Default Judgment as to the Default Defendants on April 3, 2013. The Default Defendants did not respond. A hearing was held on the motion on June 25, 2013, and the Default Defendants did not appear. Accordingly, the motion is ripe for adjudication.

## II. FINDINGS OF FACT

1. Medici888 is a Virginia corporation with its principal place of business in Norfolk, Virginia. Compl. ¶ 1.

2. Rileys and the Default Defendants are entities doing business in Virginia with a principal place of business in Sri Lanka. Compl. ¶¶ 2-5.

**Breach of Contract**

3. From July 14, 2010 through September 16, 2010, Medici888 submitted five purchase orders (PO 2010135R, PO 2010108, PO 2010124, PO 2010125 and PO 2010141) to Chrishan Mendis of Rileys, ordering over 400,000 doormats. Compl. ¶¶ 20, 33-36, Exs. A, H, I, J, and K. The purchase orders indicated the doormats were to be delivered in September, October and November 2010. *Id.*

4. On September 30, 2010, Rajapakshage Piyasena, the "Commerical Manager of Rileys Limited, Hayleys Group," accepted purchase order 2010135R by e-mail communication

to Medici888. Compl. ¶ 21, Ex. C.

5. Mr. Piyasena sent an additional e-mail on October 15, 2010, confirming acceptance of all of the purchase orders. Compl. ¶ 23, 37, Ex. D. This e-mail included a tentative shipment plan, which would accomplish the complete shipment of all doormats by the end of November 2010. *Id.*

6. On December 25, 2010, Anuruddha Dias, who idenitified himself as CEO of Rileys, confirmed that Rileys would not be able to fill PO 2010135R within the time required by Medici888. Compl. ¶ 24, Ex. E.

7. Defendants failed to ship the doormats ordered in POs 2010108, 2010124, 2010125, and 2010141 by the end of November 2010. Compl. ¶ 38.

8. Due to Defendants' failure to timely deliver to Medici888 the doormats ordered in POs 2010135R, 2010108, 2010124, 2010125, and 2010141, Medici888 suffered damages. Compl. ¶¶ 26-28, 39-40, 43, 49.

**Rileys as the Alter Ego, Agent, Representative or Joint Venturer of the Default Defendants**

9. Hayleys, PLC is a multinational conglomerate, collectively referred to by the company and its subsidiaries as the Hayleys Group, based out of Sri Lanka. Compl. ¶ 9.

10. Rileys is a Sri Lankan entity related to Hayleys PLC, which produces doormats that are sold by Hayleys PLC entities including Hayleys Fibre. Compl. ¶ 10.

11. Rileys shares offices, employees, officers, and factories with other Hayleys PLC entities including Ravi Industries Limited. Compl. ¶ 11.

12. In Mr. Chrishan Mendis's e-mail, his signature block identifies him as "Managing Director of Rileys Limited;" however, his e-mail address was chrishan.mendis@hayleys.com or laylexuk@hayleys.com. Compl. ¶ 12.

13. Rileys, Hayleys PLC, and other entities related to Hayleys PLC held themselves out as a single entity in communications with Medici888 and on their websites. Compl. ¶¶ 13, 15, 17.

14. Hayleys PLC, or its other related entities, controlled Rileys' resources, including employees, officers, and raw materials, at the expense of Rileys' customers in order to distribute them among itself and its other related entities. Compl. ¶ 16.

15. Medici888 relied on "the appearance in its communications with Rileys and in Rileys' marketing material that Hayleys [PLC] supported and backed Rileys, financially and strategically." Compl. ¶ 17.

16. Anuruddha Senanayake sent an e-mail to Greg Twitt of Medici888 on February 25, 2011, asking that Medici888 "accept our sincere apologies for the inconvenience caused due to various unfortunate incidence[sic] that happened during the last couple of months." Compl. ¶ 25, Ex. F.  Mr. Senanayake further stated, "[w]e regret the situation of PO2010135 and [sic] determined to make it right to the best of our ability." *Id.*  The signature block on Mr. Senanayake's e-mail indicated he worked for Hayleys Fibre. *Id.*

17. An officer or employee of Ravi Industries Limited made "assurances" to Medici888 that Medici888 would be compensated for the losses suffered as a result of Rileys' breaching the purchase order contracts. Compl. ¶ 13.  At the time of these assurances, Medici888 was informed by representatives of Rileys that Rileys did not have sufficient assets to compensate Medici888 for the losses caused by the breach of contract. *Id.*

### III. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure requires an entry of default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise." The Clerk properly entered default against the Default Defendants in this case as they failed to respond to the complaint within the twenty-one days allowed by Rule 12 of the Federal Rules of Civil Procedure. ECF No. 13.

Upon default, the facts alleged in the complaint are deemed admitted. *See e.g., Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F.Supp. 2d 533, 535 (E.D. Va. 2012); *Globalsantafe Corp. v. Globalsantafe.Com*, 250 F.Supp. 2d 610, 612 n.3 (E.D. Va. 2003). The Federal Rules require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Supreme Court decisions, however, mandate that a well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Simple "legal conclusion[s] . . . [are] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555). Therefore, the Court must determine whether the "well-pleaded" facts in the complaint support the relief sought in this action. *Id. Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

## IV. ANALYSIS

Medici888 is attempting to obtain default judgment against Hayleys PLC, Ravi Industries Limited, and Hayleys Fibre for damages Medici888 sustained when Rileys breached five purchase order contracts.[1] The complaint alleges "Hayleys[ PLC], Ravi [Industries Limited], and Hayleys Fibre are the alter egos, agents, related entity representatives, joint venturers, or held some other representative capacity of Rileys and are jointly and severally liable for the damages resulting from Rileys' breaches of contract []. Alternatively, Hayleys[ PLC], Ravi [Industries Limited], and Hayleys Fibre are vicariously liable for Rileys' obligations." Compl.

---

[1] During the hearing, counsel for Medici888 requested that Count II of the Compliant, related to Purchase Order 2010136, be dismissed.

¶ 18. However, the facts offered by Medici888 do not support the legal conclusions contained in paragraph 18 of the Complaint.

As this is a diversity case, the court will apply the substantive law of Virginia, the forum state, including Virginia's choice of law rules. *See Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007) (citations omitted). Under Virginia choice of law rules, the law of the place of performance governs questions concerning performance of a contract, including breach of contract claims. *Equitable Trust Co. v. Bratwursthaus Management Corp.,* 514 F.2d 565 (4th Cir. 1975); *see also Arkla Lumber & Mfg. Co. v. West Virginia Timber Co.,* 132 S.E. 840, 842 (1926). Consequently, Virginia law will be applied to this breach of contract action.

Medici888 claims the Default Defendants are the "alter egos, agents, related entity representatives, joint venturers, or held some other representative capacity of Rileys." Compl. ¶ 18. Regardless of the label assigned, Medici888 is attempting to pierce the corporate veil and hold Rileys' parent and affiliate corporations liable for Rileys' breach of the five purchase order contracts. "The alter ego doctrine states that, when the corporation is deemed an instrumentality or business conduit of another corporation or person, the corporate form may be disregarded." *Wu v. Tseng*, No. 2:06cv346, 2007 WL 201087 (E.D. Va. Jan. 24, 2007) (applying Virginia law) (citing 1 *Fletcher Cyclopedia of the Law of Corporations*, § 41.10). The alter ego doctrine may be used to hold shareholders liable for the debts of their corporation (traditional veil piercing), to hold a corporation liable for the debts of a sole shareholder (reverse veil piercing), or to hold parent, subsidiary or affiliate corporations liable for the debts of another corporation. *Id.; see* 1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 43 (1990 ed.) (addressing parent, subsidiary and affiliate corporate liability under the alter ego doctrine). Moreover, courts are more reluctant to pierce the corporate veil in contract cases than in tort

cases, because the contracting party "is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of the limited liability associated with the corporate business form. . ." *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 550 (4th Cir. 1992) (applying Virginia law) (citing 1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.85 at 712 (1990 ed.)).

In 1951, the Supreme Court of Virginia held,

> [b]efore the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary, . . . it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.

*Beale v. Kappa Alpha Order*, 64 S.E.2d 789, 797 (Va. 1951) (citations omitted). Separate corporate entities will be observed unless one corporation is proven to be the "adjunct, creature, instrumentality, device, stooge or dummy of another corporation." *Id.* at 798. Further, as a general rule, courts will observe separate corporate entities "even though one may dominate or control another, or may treat it as a mere department, instrumentality, agency, etc.; and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other." *Id.* at 798 (citations omitted). In *Beale*, the court held the facts relied upon by the Plaintiff did not present an "extraordinary" situation requiring the court to disregard the corporate form, as the parent corporation perpetrated no fraud and was not "guilty of any concealment or misrepresentations which make it liable for the debts of the [subsidiary corporation]." *Id.* at 799. *See also Eure v.*

*Norfolk Shipbuilding & Drydock Corp., Inc.*, 561 S.E. 2d 663, 669 (Va. 2002) (holding subsidiary corporation was not the alter ego of its parent corporation).

Relying on *Beale*, a Virginia circuit court sustained a demurrer, finding pleadings insufficient to state a claim for alter ego liability where the plaintiff failed to allege fraud with sufficient specificity. In *Marsh Broadcasting of Washington, D.C., Inc. v. George Mason University Foundation, Inc.*, 21 Va. Cir. 89, 1990 WL 10039258 (Va. Cir. Ct. May 14 1990), plaintiff was attempting to hold the parent corporation George Mason University Foundation ("GMUF") liable for an agreement entered into by a subsidiary corporation, Northern Virginia Radio Corporation ("NVRC"), under the theory that NVRC was the alter ego of GMUF. The plaintiff set forth allegations on information and belief regarding the relationship of the corporations, in addition to relying on "unspecified" non-written representations in support of the alter ego claim. *Id.* at *2. The court accepted as true plaintiff's allegations of undercapitalization, insolvency, overlap between the corporations' directors and officers, and the failure to observe corporate formalities. *Id.* However, as the plaintiff only alleged fraudulent intent in the abstract, the pleading was insufficient to state a cause of action against GMUF as the alter ego of NVRC. *Id.* at *3. *See also Kirkpatrick v. First American Title Ins. Co.*, 16 Va. Cir. 534, 1985 WL 306765 (Va. Cir. Ct. Feb. 25, 1985) (sustaining demurrer and dismissing claim that parent corporation was the alter ego of its subsidiary corporation, and liable for the subsidiary corporation's acts, due to plaintiff's failure to allege fraud or basic injustice).

Medici888's complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" that the Default Defendants are liable for Rileys' obligations under the purchase order contracts. *See Ashcroft v. Iqbal*, 556 U.S. at 678. First, Medici888 has not alleged facts to establish that Rileys is the "adjunct, creature,

instrumentality, device, stooge or dummy" of any of the Default Defendants. *See Beale*, 64 S.E.2d at 798. Further, to the extent Medici888 has alleged any fraudulent intent or conduct on the part of the Default Defendants, the allegations are not set forth with sufficient specificity. The closest Medici888 comes to alleging Rileys is the alter ego of the Default Defendants is the allegation that, "Hayleys or its other related entities controlled Rileys' resources, including employees, officers, and raw materials, at the expense of Rileys' customers in order to distribute them among itself and its other related entities." Compl. ¶ 16. This allegation, together with the remaining allegations in the complaint, fall far short of alleging facts with sufficient specificity to warrant piercing the corporate veil and holding the Default Defendants liable for Rileys' breach of the purchase order contracts. Therefore, the Court RECOMMENDS that Plaintiff's motion for default judgment be DENIED.

Further, based on counsel's request during the hearing on this motion, the Court RECOMMENDS that Count II of the Complaint be DISMISSED.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

                                                  /s/
                                     Tommy E. Miller
                         United States Magistrate Judge

Norfolk, Virginia
September 3, 2013